W. N. FORD ET AL., APPELLANTS, V. PERRY E. THOMPSON, APPELLEE.

FILED DECEMBER 4, 1913. No. 18,143.

Intoxicating Liquors: LICENSES: POWER OF BOARD. Where the electors of a city or village at a legal election held therein under the provisions of section 1, ch. 75, laws 1911 (Comp. St. 1911, ch. 50, sec. 25) have voted upon the question of "license" or "no license" for the sale of intoxicating liquors, and a majority of the votes cast are in favor of "no license," the city or village board have no authority to issue a license during the then current year.

APPEAL from the district court for Sheridan county: WILLIAM H. WESTOVER, JUDGE. *Reversed with directions.*

*A. C. Plantz* and *M. F. Harrington,* for appellants.

*Allen G. Fisher, William P. Rooney* and *R. L. Wilhite,* contra.

REESE, C. J.

An application was made to the chairman and board of trustees of the village of Rushville for a license authorizing Perry E. Thompson to sell intoxicating liquors in said village. The petition was signed by the requisite number of resident freeholders of the village, and notice of the time for hearing was duly given. A remonstrance was presented, in which it was alleged that prior to the first Tuesday in April, 1913, a petition signed by 54 resident freeholders of the village had been presented to the clerk asking that the question of whether license should be issued for the sale of liquors therein be submitted to the legal voters at said election, that the question was duly submitted, and that at said election a majority of the electors voted against the issuance of such license. At the hearing before the village board it was stipulated that the election was duly held, and that the result thereof was as alleged and fully set out in the remonstrance. The

applicant filed a motion to strike from the remonstrance the averments relative to said election, upon the grounds: "(1) That said pretended remonstrance does not state facts sufficient to constitute a remonstrance; (2) that said remonstrance does not state facts sufficient to constitute a legal objection to the issuance of a license; (3) for the reason that the facts stated in the pretended remonstrance are not sufficient to constitute a repeal of the present ordinance permitting the issuance of license in said village now in full force and effect." This motion was sustained and the license ordered to issue. The remonstrants appealed to the district court, where the action of the village board was affirmed, and the appeal dismissed. The remonstrants now appeal to this court.

As we view the case, the only question is as to the effect of the election upon the question of "license" or "no license," for it is conceded that a legal and proper election was held. It is provided in section 25, ch. 50, Comp. St. 1911, that "in incorporated cities and villages of less than 10,000 inhabitants, if thirty legal resident voters, or if there are less than sixty, a majority, who are also freeholders within the corporate limits of the city or village, at least thirty days before a municipal election, petition the proper authorities to have the question of 'license' or 'no license' submitted thereat, the question shall be submitted in the manner prescribed by existing law for the submission of other questions and the majority vote of those voting on the question shall be mandatory upon the licensing authorities." The contention that this provision of the statute is subject and subordinate to any ordinance that the board may enact cannot be maintained. It is true that before any license can be issued there must be an ordinance providing for the same (*State v. Andrews*, 11 Neb. 523), but that does not carry with it the imposition of the duty to issue a license where the board is satisfied that for any legal reason the license ought not to issue. The discretion of the board is not destroyed by the passage of such an ordinance. It is to be observed

that by the provision of the statute it is left with the people of the village or city to direct the action of the board, when they see proper to do so, and when they do take action in the manner prescribed their decision shall be final, and, in so far as to whether license may or may not issue, the action of the majority should be mandatory upon the licensing authorities. "A 'mandatory' provision in a statute is one which must be observed, as distinguished from a 'directory' provision, which is one which leaves it optional with the department or officer to which it is addressed to obey it or not, as he may see fit." 5 Words and Phrases, 4332. "Mandatory. Containing a command; preceptive; imperative; peremptory." Black, Law Dictionary (2d ed.) 754. "In the construction of statutes, this word is applied to such as require to be obeyed, under penalty of having proceedings under them declared void." 2 Bouvier, Law Dictionary (Rawles' revision) 305. See 26 Cyc. 513. "Mandatory Statute. A statute the effect of which is that, if its provisions are not complied with according to their terms, the thing done is, as to it, void." Century Dictionary. "Mandatory. Containing a command; peremptory." Cyclopedic Law Dictionary. See *Hurford v. City of Omaha*, 4 Neb. 336, 351. Without citing any further authorities, and there are many others, it is clear that the provisions of the statute above quoted require that they *must* be obeyed, and that any act done in violation of its provisions is void. It was the clear purpose and intention of the legislature to remove the agitation of the question of "license" or "no license" from the jurisdiction and authority of the village board in all cases where the electors of the municipality assumed to take the matter in hand and decide the question for themselves. The board had no other jurisdiction nor authority than to do as directed by the people. If the "no license" vote was in the majority, their power over the question was entirely taken away and no license could legally issue for the current year. If the "license" vote was in the majority, the board might not arbitrarily re-

fuse to grant any licenses, but their discretion as to particular cases was not destroyed. It follows that the action of the board in granting the license was void.

Objection is made to the record presented to the district court, and now to this court. Prior to the hearing before the village board, it was stipulated that the proceeding might be taken down by the official stenographer of the district court, who was present, and that his transcript should be certified by the village clerk and deposited in the office of the clerk of the district court, should an appeal be desired by either party. While in some respects there may have been a departure from the usual course, we see no good reason why the parties might not, in the economy of time, enter into and follow such a stipulation. The transcript was duly certified by the village clerk, filed in the office of the clerk of the district court, and is certified to this court by the latter. But, even if the validity of the authentication of the evidence should be open to question, that fact could make no difference. It was shown by the remonstrance that a valid election had been held. All the board could then do was to examine the proofs of the fact, the evidence of which, attached to the remonstrance, was before them. If the election had been held resulting in a majority vote for "no license," they had no jurisdiction over the matter, and the only thing they could lawfully do was to obey the mandate of the statute and go no further with the hearing. The mere fact that an election had been held and "no license" voted deprived them of all power to act. The jurisdiction of the district court and this court cannot therefore be questioned.

Our attention is called to a certificate of the secretary of state setting out the legislative proceedings of 1881, by which chapter 50, Comp. St. 1911, was passed, and it would seem from the reading of appellee's brief that the regularity of the passage of the act by the legislature is attacked. This question was not submitted to the district court; the date of the certificate showing that it was

issued long after the hearing in the district court, and nearly three months after the appeal was filed in this court. New questions cannot be sprung upon a case in that way in the appellate court.

It is claimed that the provisions of chapter 32, laws 1897, though never in force in the village of Rushville, should be considered here as throwing light upon the intention of the legislature of 1911 in passing the provision for election on "license" or "no license" herein above quoted. It is so plain that the two acts are separate and independent of each other, we will give the subject no further attention.

The judgment of the district court is reversed and the cause is remanded, with directions to reverse the order of the village board, cancel the license, and dismiss the application therefor. As the pretended license can afford no protection to the licensee, the action of the board should be taken at once. ·

REVERSED.

LETTON, FAWCETT and HAMER, JJ., not sitting.